IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 27, 2017 Session

## SONJA BROYLES WILLIAMS v. STEWART ASHLEY WILLIAMS

**Direct Appeal from the General Sessions Court for Hardin County
No. GS5446     Larry McKenzie, Judge, Sitting by Interchange**

_____

### No. W2016-01602-COA-R3-CV
_____

This is an appeal from a divorce case dissolving a long-term marriage with two minor children.  Following a four and one-half day trial, the court awarded Wife a divorce, designated Husband as the primary residential parent of the parties' children, distributed the marital property, awarded Wife rehabilitative alimony, and denied Wife's request for attorney's fees.  Wife appeals the designation of Husband as primary residential parent, the value and division of certain items within the marital estate, the court's decision to award her rehabilitative alimony rather than alimony in futuro, and the denial of her request for attorney's fees.  We vacate the trial court's order regarding retroactive child support and remand the issue for further proceedings consistent with this opinion.  We affirm the remainder of the judgment of the trial court.  We deny Wife's request for attorney's fees incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court
Vacated in part, Affirmed in part, and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Terry Lynn Wood, Adamsville, Tennessee, for the appellant, Sonja Broyles Williams.

Ryan Michael Hagenbrok and Katherine Parrish Hagenbrok, Savannah, Tennessee, for the appellee, Stewart Ashley Williams.

### OPINION

### I. FACTS & PROCEDURAL HISTORY

Sonja Broyles Williams ("Wife") and Stewart Ashley Williams ("Husband") married on May 24, 1996.  During the course of the marriage, the parties had four

children, two of whom were minors at the time of trial (the "Children"). During the marriage, Husband worked as a general manager at a car dealership. Wife is a registered nurse and was employed off and on throughout the marriage, both full and part-time. Wife originally filed a complaint for divorce against Husband in 2002, but the parties then reconciled for more than ten years. Apparently unaware that Wife's 2002 complaint for divorce had never been dismissed, Husband filed for divorce from Wife under a new docket number in 2013. The trial court dismissed Husband's complaint, and the parties proceeded to litigate this divorce pursuant to Wife's original complaint.

One night in October of 2012, there was an altercation between the parties, and Wife's leg was broken. Husband and Wife have very different recollections of what led to Wife's injury. Wife testified that Husband violently and criminally assaulted her that night, which caused grievous injury to her leg. Husband testified that Wife was actually the aggressor and that she injured her leg while she was pursuing him and she tripped and fell. The trial court eventually resolved this issue in favor of Husband, finding that there was not sufficient evidence to support Wife's allegation that Husband intentionally injured her. Wife is currently receiving social security disability benefits as a result of the injury to her leg and various psychological problems.

Prior to the start of the divorce trial, the court heard testimony from the parties' son, then 13 years old, and their daughter, then 12 years old, regarding their preference of with which parent they wanted to live. Both children expressed a desire to live with their father.

The case was tried over the course of four and one-half days and included the testimony of 14 witnesses and the introduction of 77 exhibits. The issues before the court at trial were (1) which party was entitled to a divorce; (2) the entry of a permanent parenting plan; (3) division of marital property and marital debt; (4) Wife's request for alimony; and (5) Wife's request for attorney's fees. The trial court issued a written ruling on February 16, 2016. In its written ruling, the court held that Wife was entitled to a divorce because Husband was continuously absent from the home and "gave up on his marriage." The court determined that Husband should be the Children's primary residential parent. The court also divided the marital assets and debt, awarded Wife rehabilitative alimony for three years, and denied Wife's request for attorney's fees.

The court entered a final judgment on March 21, 2016, which incorporated by reference its written rulings. The final judgment also stated that "requests by either party for retroactive support are denied." The court simultaneously entered a permanent parenting plan consistent with its ruling.[1] The permanent parenting plan designates

---

[1]This plan was later amended to correct some inadvertent errors, but the substance of the plan remained consistent with the court's written ruling.

Husband as the Children's primary residential parent, giving Husband 275 days of parenting time and Wife 90 days. In the parenting plan, the court specifically stated that "[t]he custody preference of the children has been a significant factor in preparing this parenting plan." Regarding child support, the trial court held that Wife should not pay child support at this time because she is "presently disabled and drawing social security disability." The court did, however, assign Father as the payee for the Children's social security payments and gave Wife credit for said payments. Again, the trial court declined to calculate retroactive child support for either party.

## II. ISSUES PRESENTED

Our review of the merits of this appeal has been hindered by Wife's failure to provide a proper statement of the issues presented on appeal as required by Rule 27(a)(4) of the Tennessee Rules of Appellate Procedure. In his brief, Husband presented a statement of what he considered to be Wife's issues for our review "based on the arguments raised in [Wife's] brief." Despite the deficiencies in Wife's brief, we exercise our discretion to move forward with the issues we have gleaned from Wife's arguments in her brief and that Husband has identified for our review on appeal. We have restated five issues before us as follows:

1. Whether the trial court erred in designating Husband as the Children's primary residential parent?

2. Whether the trial court erred in declining to award retroactive child support to Wife?

3. Whether the trial court erred in valuing certain marital assets and dividing the marital estate?

4. Whether the trial court erred in refusing to award Wife alimony in futuro?

5. Whether the trial court erred in refusing to award attorney's fees to Wife?

## III. STANDARD OF REVIEW

This case was tried by the trial court without a jury. We therefore review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review the trial court's conclusions of law *de novo* with no

presumption of correctness. *Hyneman v. Hyneman*, 152 S.W.3d 549, 553 (Tenn. Ct. App. 2003).

## 1.  Designation of Primary Residential Parent

Mother challenges the trial court's decision to designate Husband as the Children's primary residential parent.  Matters of custody and visitation are generally within the broad discretion of the trial court. *Melvin v. Melvin*, 415 S.W.3d 847, 850-51 (Tenn. Ct. App. 2011) (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *Smallwood v. Mann*, 205 S.W.3d 358, 361 (Tenn. 2006)).  This is because such decisions often hinge on subtle factors, such as the parents' demeanor and credibility during proceedings. *Rountree v. Rountree*, 369 S.W.3d 122, 129 (Tenn. Ct. App. 2012).  However, a trial judge's discretion when determining the details of custody and visitation must be based on evidence and applicable rules of law.  *Hogue v. Hogue*, 147 S.W.3d 245, 251 (Tenn. Ct. App. 2004).   A trial court abuses the discretion afforded to it only when it applies an incorrect legal standard or makes a decision that is against logic or reasoning causing an injustice to the complaining party. *Eldridge*, 42 S.W.3d at 85.

### A.  Tennessee Code Annotated section 36-6-406

Wife first contends that the trial court erred in refusing to apply Tennessee Code Annotated section 36-6-406(b) to this case based on her allegations that Husband physically abused her.  Section 406 sets forth circumstances that warrant imposing severe restrictions on a parent's visitation with their children. *See* Tenn. Code Ann. § 36-6-406. In her brief on appeal, Wife specifically cites to subsection (b) of this statute, which states that a "parent's residential time with the child shall be limited if it is determined by the court . . . *that the parent resides with a person* who has engaged in physical or sexual abuse." Tenn. Code Ann. § 36-6-406(b).  However, Wife does not appear to have ever alleged that Husband resides with anyone who has abused another person.  Rather, Wife's contention is that "Husband's act of kicking Wife's leg undoubtedly fits the definition of abuse," which should make section 406 applicable to restrict Husband's parenting time.  Based on Wife's argument, we assume that the portion of section 406 to which Wife is actually referring is section 406(a)(2), which requires a parent's residential parenting time to be limited if that parent has engaged in physical, sexual, or emotional abuse of the other parent, child, or another person living with that child.  Tenn. Code Ann. § 36-6-406(a)(2).

Wife points to the incident on October 12, 2012 that resulted in the injury to her leg to support her allegation that she was physically abused by Husband.  Wife acknowledges, however, that the "trial court discussed and rejected Wife's claim of abuse by Husband."  Whether Husband was actually responsible for Wife's injuries to her leg

was a hotly debated issue throughout the trial. The trial court heard testimony from the parties and others regarding what happened that evening and ultimately concluded "[t]here is simply not enough evidence to support an intentional injury caused [to Wife] by Husband." In support of this determination, the trial court noted that Wife never told anyone about the alleged abuse, Husband had no history of physical abuse, Wife allowed Husband to move back into the marital home, and the record is devoid of any evidence that Wife was frightened of Husband. After reviewing the record, we conclude that the evidence does not preponderate against the trial court's finding against Wife's allegation of physical abuse, and accordingly we discern no error in the trial court's failure to apply Tennessee Code Annotated section 36-6-406 when fashioning a permanent parenting plan in this case.

### B. Tennessee Code Annotated section 36-6-106(a)

Wife also argues that the trial court erred in weighing the "best interest factors" set forth in Tennessee Code Annotated section 36-6-106(a), and that a proper weighing of those factors should have resulted in the court naming her the Children's primary residential parent. Trial courts have broad discretion in fashioning child custody and visitation arrangements that best suit the unique circumstances of each case. *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999). However, that discretion is limited to some degree by the statutory directive that such determinations "shall be made on the basis of the best interest of the child." Tenn. Code. Ann. § 36-6-106(a). Additionally, section 36-6-106 directs courts to consider "all relevant factors," including a non-exclusive list of fifteen factors, when determining the best interests of a child in a primary residential parent determination. Determining a child's best interest is a "fact-sensitive inquiry" that does not call for "rote examination of each of [the relevant] factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case." *Solima v. Solima*, No. M2014-01452-COA-R3-CV, 2015 WL 4594134, at *4 (Tenn. Ct. App. July 30, 2015) (*no perm. app. filed*) (quoting *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005)). To that end, the determination of what is in a child's best interest could turn on a single factor. *See In re Marr*, 194 S.W.3d at 499.

On appeal, Wife summarizes her argument related to the trial court's alleged error in reviewing the best interest factors as follows:

> [T]he trial court failed to properly consider the factors in Tenn. Code Ann. § 36-6-106(a). Even a cursory review of the undisputed facts in this case point to all factors being in favor of Wife as the primary residential parent. Had the trial court taken the time to individually contemplate the factors fairly it would have been obvious that Wife should have been so designated

as the primary residential parent.

Ironically, Wife herself fails to take the time to point this Court to any particular evidence that applies any specific factor that would require the trial court to find that factor weighed in favor of Wife. Rather, Wife's argument related to this issue includes a lengthy recitation of her allegations of Husband's bad acts, Husband's girlfriend's bad acts, and her disagreement with the weight the court put on her Children's stated preference to live with Husband.

On the other hand, the trial court made extensive written findings of fact with regard to what was in the Children's best interest and held as follows:

> Both parties seek custody of the two minor children. T.C.A. § 36-6-106 states that said determination should be made based on the best interest of the minor children. A second goal of T.C.A. § 36-6-101 is to allow both parents the maximum participation possible in the lives of the children. This Court has considered carefully each of the factors set forth in T.C.A. § 36- 6-106.
>
> Until Wife's accident, she was the primary caregiver for the two minor children of the marriage. Because of Husband's work schedule the Wife was responsible for, including but not limited to, transportation to school, school activities, shopping, tutoring and feeding the children. The record reflects that she excelled as a Mother to her children. The Wife's injury arising out of the altercation between the parties changed her relationship to her two minor children. She could no longer take care of herself, let alone take care of her children. Circumstances beyond her control affected how her two younger children began to feel about her. Two important events occurred in the lives of these two children. The Husband changed his attitude to late nights at work and began to establish a closer relationship with the children. He began to date a family nurse practitioner [Melanie Reaves] who was able to establish a close relationship with the children. The two are now engaged and have purchased a house and are residing therein. To Wife's credit she saw the benefits of the care of Ms. [Reaves] and encouraged that relationship because it was in the best interest of her children.
>
> The children are intelligent, articulate and mature for their age. They testified without hesitation that they desire to live with their Father. The children love both of their parents and desire to have a good relationship with both. During the pendency of the divorce, the minor son found

6

marijuana in his Mother's bedroom. She denied the marijuana was hers, claiming it belonged to the Husband. This has caused some tension between Mother and son. The children testified that it is a regular occurrence for Mother's friend to come to visit and the two drink alcohol. Coupled with the fact that Mother has not returned to work, the relationship between the Mother and the two children has become strained. Mother has been the steadfast constant in the children's life up until the accident. The children's belief that the Mother has voluntarily refrained from going back to work and resuming an active life is a real issue to the children and must be considered in determining the best interest of the children.

When weighing all of the factors set forth in T.C.A. § 36-6-106 the Court concludes that both parents love their children, both children love their parents, both are able to nurture and parent their children. The Court does have concerns with the present emotional stability of the Wife given her slow recovery from her accident, her anxiety issues and the stress of a protracted divorce. Therefore, the custody preference of the two minor children should be given greater weight and the primary caregiver should be the Father.

Wife's allegation that the trial court "dropped the ball" with regard to designating Husband as the Children's primary residential parent is not sufficient for this Court to find reversible error in the trial court's analysis outlined above. The trial court conducted a proper best interest analysis pursuant to Tennessee Code Annotated section 36-6-106(a), and the evidence does not preponderate against the trial court's findings. We conclude that the determination made by the trial court was within the spectrum of rulings that could reasonably flow from the applicable facts and law, and we therefore affirm the judgment of the trial court designating Father as the Children's primary residential parent.

## 2. Retroactive Child Support

Mother next contends that the trial court erred in declining to award child support to her for the period of time during which the Children resided primarily with her, which extended from March 2013 until September 2014. In its written findings of fact and conclusions of law, the trial court held as follows:

As to the issue of child support the Mother is drawing social security disability. The Father will be the payee of the children's social security payments received through Mother's disability. The Court chooses not to set child support for the Mother because the Mother is currently disabled

7

and the Father has substantial income. The Mother is given credit for the social security payments made by the Social Security Administration on behalf of the children (Sherrell vs. Sawyer, 1987 Tenn. App. Lexis 3197.) The Court has entered a Parenting Plan, a copy of which is attached to this opinion.

In Tennessee, a parent's child support obligation is governed by the Child Support Guidelines set forth by the Tennessee Department of Human Services in accordance with Tennessee Code Annotated section 36-5-101(e). We have articulated our standard of review of a trial court's decision on child support as follows:

> [T]he adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. . . .
>
> . . . .
>
> Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. . . . Discretionary decisions must, however, take the applicable law and the relevant facts into account.

*Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005) (internal citations omitted).

The Child Support Guidelines (the "Guidelines") specifically state that, unless the rebuttal provisions set forth in Tennessee Code Annotated sections 36-2-311(a)(11) [2] or 36-5-101(e)[3] have been established by clear and convincing evidence, in cases where a court is setting an initial child support order, "a judgment <u>must</u> be entered to include an amount of monthly support due up to the date that an order for current support is entered." Tenn. Comp. R. & Reg. 1240-02-04-.06(1). Subsection (3) of that regulation goes on to set forth the manner in which "retroactive [child] support . . . shall be calculated." Tenn. Comp. R. & Reg. 1240-02-04-.06(3). And while a trial court may use its discretion to deviate from the Guidelines in determining retroactive child support, "this discretion is narrow and must be exercised within the constraints and limitations of

---

[2]Tennessee Code Annotated section 36-2-311(a)(11)(A) relates to cases establishing parentage and is inapplicable to the case at bar.

[3]Tennessee Code Annotated section 36-5-101(e) describes circumstances under which an obligor parent may be entitled to a deviation in retroactive child support owed pursuant to the Guidelines in cases of divorce or separation.

8

the guidelines." *Redmond v. Hunt*, No. W2004-00217-COA-R3-JV, 2004 WL 2848385, at *3 (Tenn. Ct. App. Dec. 10, 2004). Specifically, the Guidelines require the following:

(2) Deviations from the presumption that a judgment for retroactive support shall be awarded back to the date of the birth of the child, the date of the separation of the parties, or the date of the abandonment of the child <u>shall</u> be supported by written findings in the tribunal's order that include:

(a) The reasons the tribunal, pursuant to Tennessee Code Annotated §§ 36-2-311(a)(11)(A) or 36-5-101(e)(1)(C), deviated from the presumptive amount of child support that would have been paid pursuant to the Guidelines; and

(b) The amount of child support that would have been required under the Guidelines if the presumptive amount had not been rebutted; and

(c) A written finding by the tribunal that states how, in its determination,

1. Application of the Guidelines would be unjust or inappropriate in the particular case before the tribunal; and

2. The best interests of the child or children who are subject to the support award determination are served by deviation from the presumptive guideline amount.

Tenn. Comp. R. & Regs. 1240-02-04-.06 (emphasis added).

"When 'shall' is used in a statute or a rule, the requirement is mandatory." *Bellamy v. Cracker Barrel Old Country Store, Inc.,* 302 S.W.3d 278, 281 (Tenn. 2009) (citing *Stubbs v. State,* 393 S.W.2d 150, 154 (Tenn. 1965)). The trial court's order and reasoning for declining to order retroactive child support in this case does not include the written findings required by subsections (b) and (c) as outlined above, which are mandatory in the event that the court deviates from ordering retroactive child support. We must therefore remand this issue for calculation of retroactive child support pursuant to the Guidelines.

**3.   Valuation and Division of Marital Property**

Wife next alleges that the trial court erred in the following respects regarding its

9

valuation and division of the parties' marital property:

    A.      Valuation of the Marital Home at 35 Fawn Lane

    B.      Equity in 110 Breathtaking Loop Pickwick Lake Property

    C.      Husband's Dissipation of Marital Assets

This Court has set forth the following principles with regard to a trial court's division of marital property:

> Trial courts have broad discretion in fashioning an equitable division of marital property, and appellate courts must accord great weight to a trial court's division of marital property. Accordingly, it is not our role to tweak the manner in which the trial court has divided the marital property. Rather, our role is to determine whether the trial court applied the correct legal standards, whether the manner in which the trial court weighed the factors in Tenn. Code Ann. § 36-4-121(c) is consistent with logic and reason, and whether the trial court's division of marital property is equitable.
>
> The division of the marital estate includes both the division of marital property and the allocation of the marital debt. Trial courts have not completely divided a marital estate until they have allocated both the marital property and the marital debt. Thus, an examination of the manner in which a trial court divided the marital property must take into consideration how the trial court allocated the marital debt.

*Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007) (Internal citations omitted).

    A.      <u>Valuation of the Marital Home at 35 Fawn Lane</u>

Wife contends that the trial court erred in valuing the parties' marital home at $300,000.00, although she does not specify the valuation that the trial court should have adopted. The value of marital property is a question of fact. *Owens v. Owens*, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007). "'The value of a marital asset is determined by considering all relevant evidence regarding value.' If the evidence of value is conflicting, the trial judge may assign a value that is within the range of values supported by the evidence." *Powell v. Powell*, 124 S.W.3d 100, 105-06 (Tenn. Ct. App. 2003) (quoting *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987)). "[A] trial court's decision with regard to the value of a marital asset will be given great weight on appeal."

*Wallace,* 733 S.W.2d at 107.

Throughout the course of litigation, the marital home was valued by the parties at different amounts ranging from $295,000.00 to $342,000.00. At trial, Husband testified that the value of the marital home was less than the debt held against it, which was around $300,000.00. The trial court determined that the home was worth $300,000.00 and the debt owed on the home was $300,000.00. An assessment of $300,000.00 is squarely within the range of values for the home supported by evidence that was presented to the trial court. Accordingly, we affirm the trial court's valuation of the home at 35 Fawn Lane.

B.    Equity in 110 Breathtaking Loop Pickwick Lake Property

Wife next states that she "disagreed with the trial court's distribution of the spectacular 110 Breathtaking Loop Pickwick Lake property purchased by Husband with his girlfriend Reaves." The trial court found the value of a one-half interest in this property to be worth $600,000.00 and the debt on the property to be $527,500.00. The court further found that neither Husband nor the marital estate had an interest in any of the equity in this property.

Husband purchased this property with his fiancée, Ms. Reaves. The two obtained financing to aid in the purchase of the home. The loan officer who handled the mortgage for the property, Darrin Howard, testified that Ms. Reaves made the down payment on the property in the amount of $155,000.00 and that Husband did not contribute any funds. Husband and Ms. Reaves were not married when this property was purchased, and Wife has cited no authority for the position that Husband was entitled to any portion of the equity in the property. The trial court made a specific written finding that the testimony of Mr. Howard was credible. After reviewing the record, we conclude that the value of Husband's interest in this property was zero. Accordingly, we affirm the finding of the trial court.

C.    Dissipation

Finally, Wife contends that the trial court's distribution of marital property was inequitable because the court failed to account for what she alleges to be Husband's dissipation of marital property. It is difficult to discern precisely what Wife's argument is on this point, but she appears to contend that the trial court should have charged against Husband's portion of the marital estate a sum of money he electronically transferred to Ms. Reaves, as well as money Husband spent on one of the Children's orthodontic bills.

The record shows that the trial court heard evidence from both parties on the issue

11

of dissipation and declined to factor it into the division of the marital estate. Husband testified that the electronic transfers to Ms. Reaves were loans and that Ms. Reaves reimbursed him. The record does not preponderate against the trial court's determination that there was no dissipation of marital assets. Furthermore, pursuant to Tennessee Code Annotated section 36-4-121(c)(5)(A), the extent to which a party may have dissipated marital assets is only one of multiple factors that a court takes into account when dividing marital property. After considering Wife's arguments on the point, we cannot conclude that the trial court's division of marital property was inequitable or otherwise in error, and we affirm the court's valuation and distribution of marital property in all respects.

### 4. Spousal Support

Wife requested that the trial court award her long-term spousal support in the form of alimony in futuro. Ultimately, the court decided that "Wife can achieve, with a reasonable effort, an earning capacity that will permit Wife's standard of living after divorce to be reasonbl[y] comparable to the standard of living she enjoyed prior to the divorce." Consequently, the court awarded Wife rehabilitative alimony in the amount of $1,000.00 per month for twelve months, eight hundred dollars per month for twelve months, and six hundred dollars per month for twelve months. According to Wife, the trial court erred in "failing to award disabled Wife alimony in futuro."

The Tennessee Supreme Court has articulated a deferential standard of review applicable to a trial court's decision on matters of alimony:

> For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal support. *See Robinson v. Robinson*, 26 Tenn. (7 Hum.) 440, 443 (1846) ("Upon a divorce . . . the wife is entitled to a fair portion of her husband's estate for her support, and the amount thus to be appropriated is a matter within the legal discretion of the chancellor . . . ."). This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount and duration of the award. *See e.g., Bratton v. Bratton*, 136 S.W.3d 595 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).

> Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful consideration of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew*, 40 S.W. 3d at 470; *Robertson*

*v. Robertson*, 76 S.W.3d 337, 340-41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus, 'envisions an less rigorous review of the lower court's decision and decreased likelihood that the decision will be reversed on appeal.'" Henderson, 318 S.W.3d at 335 (quoting *Lee Medical Inc., v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by a trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (footnote omitted).

Tennessee Code Annotated section 36-5-121(d)(1) outlines the four types of spousal support that are recognized under Tennessee law: (1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony. Alimony in futuro "is intended to provide support on a long-term basis until the death or remarriage of the recipient." *Gonsewski*, 350 S.W.3d at 107 (citing Tennessee Code Annotated section 36-5-121(f)(1)). The Tennessee General Assembly, however, has set forth a clear legislative preference for rehabilitative alimony:

(2) It is the intent of the general assembly that a spouse, who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible, by the granting of an order for payment of rehabilitative alimony. To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's

13

standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(d)(2).

In awarding Wife rehabilitative alimony, the trial court set forth its extensive reasoning as follows:

The parties have been married for 19 years. Both have worked diligently outside the home. The Husband's hard work and accomplishments have benefitted the family through consistent good yearly earnings. Wife, prior to her accident, achieved the position of Director of Nursing and was a respected professional in her field. In addition, she willingly assumed total responsibility for the home and children. The tragic event of October 12, 2012 in which Wife was injured during an altercation brought substantial changes to Wife's health, both physically and mentally. There is no question that rehabilitative alimony to the Wife is proper in this cause of action.

The difficult question the Court must resolve is the rehabilitation time needed and the amount that is fair to both parties. Exhibit 25, Social Security Disability Notice of Award indicates that Wife has four impairments as follows: (1) Dysfunction, severe (2) Disorders of the back, severe (3) Anxiety disorders, severe and (4) Affective disorders, severe. Dr. Frazier, in his deposition, Exhibit 5, indicates that the Wife did not pursue the physical therapy necessary to gain a full recovery. There is no testimony of Wife seeking mental treatment for the anxiety disorders and the affective disorders. In Exhibit 5, page 8 the following question is asked and answered. Question: What is your assessment of the credibility of the individual's statements regarding symptoms concerning the total medical and [nonmedical] evidence in the file? Answer: Partially credible. Credibility assessment. Claimants assessment are partially credible as there is an expectation that post surgery she will continue to ambulate with improvement.

The Court, in weighing all of the evidence, must judge the credibility of the witnesses including the parties. Wife is pessimistic about a full recovery and the Court finds that based on her testimony as well as other testimony is that she should be optimistic about solving her medical problems through

14

physical therapy and her mental issues through psychiatric counseling in order that she can return to a nursing career.

Children are not vocational experts. However, they can make simple day to day observations about the physical condition of their Mother. They lived with their Mother before the accident and they lived with their Mother after the accident and their observation is that Mother can return to work. Mother has now driven to Florida and back for a vacation. She has resumed many of her activities around the house as well as shopping and attending school activities. It is Dr. Frazier's belief that the surgery was successful.

Judith Young who worked in the home for six months testified that the Wife improved to the point that she was driving herself. Ms. Young took a dim view of Wife stating that the Wife was lazy.

It is the opinion of this Court that Wife can achieve, with a reasonable effort, an earning capacity that will permit Wife's standard of living after the divorce to be reasonable comparable to the standard of living she enjoyed prior to the divorce. The Court has considered the parties age, length of the marriage, the severity of the injury and slowness of recovery, the Wife's need and the Husband's ability to pay. The Court has also considered the fact that Husband will be the primary caregiver of the children and the fact Husband will be receiving no child support from the Wife. Therefore, Husband will pay Wife the sum of One Thousand ($1,000.00) Dollars per month for a period of twelve (12) months, Eight Hundred ($800.00) Dollars for a period of twelve (12) months and Six Hundred ($600.00) Dollars for a final period of twelve (12) months. Rehabilitative alimony will terminate on the death of Husband or Wife. Husband will carry appropriate life insurance to protect the Wife in the event of Husband's untimely death.

Our review of this discretionary decision involves three determinations: (1) whether the factual basis for the trial court's decision is properly supported in the record; (2) whether the trial court applied the correct legal principles; and (3) whether the trial court's decision was within the range of acceptable alternatives. *Gooding v. Gooding*, 477 S.W.3d 774, 780 (Tenn. Ct. App. 2015). After reviewing the record, we determine that the evidence does not preponderate against the trial court's findings of fact above. Although Wife asserts that the trial court could not have reasonably found that she could be rehabilitated when she is receiving Social Security Disability, the court appears to have properly considered the substance of the disability award. In addition to the

analysis set forth by the trial court, Trial exhibit 25, which is the notice that Wife received entitling her to Social Security Disability, states that her disability determination will be reviewed every three years - the same amount of time for which the trial court awarded rehabilitative alimony. The claim analysis also states that "there is an expectation that post-surgery [Wife] will continue to ambulate with improvement." Wife's disability notice also indicates that she is not limited to unskilled work due to her impairments. Furthermore, we conclude that the trial court's analysis properly identified and employed the correct principles for determining an award of alimony, which are set forth in Tennessee Code Annotated section 36-5-121(i). In sum, we hold the determination of the trial court was within the range of reasonable alternatives available in light of the facts and law applicable to this case. We therefore affirm the court's award of rehabilitative alimony.

### 5. Attorney's Fees

Wife's final arguments raised on appeal relate to attorney's fees. According to Wife, the trial court erred in refusing to exercise its discretion to award her reasonable attorney's fees at trial pursuant to Tennessee Code Annotated sections 36-5-121(a) and 35-5-103(a). Wife states that she is not able to pay for her attorney, Husband has "substantial" income, and Husband was found at fault in the divorce. In the context of a divorce, an award of attorney's fees is considered an award of alimony. *Long v. Long*, 957 S.W.2d 825, 829 (Tenn. Ct. App. 1997). As we have related herein, a trial court is afforded wide discretion in an award of alimony, which in this regard is attorney's fees, and we will not reverse that decision absent a showing of abuse of discretion. *See Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995). Wife does not include any citations to the record or otherwise expound upon her claim that she is in need of money to pay her attorney. Accordingly, we decline to find that the trial court abused its discretion in refusing to award Wife attorney's fees.

Wife has also devoted a single sentence in her brief to request that this Court grant her attorney's fees incurred on appeal. The determination of whether to award attorney's fees on appeal is within the sole discretion of the appellate court. *Moses v. Moses*, E2008-00257-COA-R3-CV, 2009 WL 838105, at *10 (Tenn. Ct. App. Mar. 31, 2009) (*no perm. app. filed*) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). We respectfully deny Wife's request.

### IV. CONCLUSION

For the foregoing reasons, we vacate the trial court's order regarding retroactive child support and remand that issue for further proceedings consistent with this opinion. We affirm the judgment of the trial court in all other respects. We deny Wife's request

for attorney's fees incurred on appeal. Costs of this appeal are taxed equally to Husband and to Wife and her surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE